[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-11755

_____

D.C. Docket No. 8:10-cv-00733-JSM-TGW

LETICIA MORALES,
Individually and as Personal Representative
of the Estate of Santana Morales, Jr., deceased,
as parent and natural guardian of SM and RM, minors,
as legal guardian for Santana Morales, III and
Marciela Morales, individually,

Plaintiff-Appellant,

versus

ZENITH INSURANCE COMPANY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(April 15, 2013)

Before CARNES, HULL and FAY, Circuit Judges.

HULL, Circuit Judge:

In this diversity case, Plaintiff-Appellant Leticia Morales, on behalf of herself, the Estate of Santana Morales, Jr., and two minor children under her guardianship, along with Marciela Morales (collectively, "the Estate"), challenges the district court's grant of summary judgment to Defendant-Appellee Zenith Insurance Company ("Zenith") on the Estate's breach of the insurance contract claim.  After review and oral argument, we certify questions to the Florida Supreme Court.

## I.  BACKGROUND

### A.    Employer Lawns's Insurance Policy with Zenith

On December 4, 1997, Santana Morales, Jr., was working as a landscaper for Lawns Nursery and Irrigation Designs, Inc. ("Lawns").  That day Morales was crushed to death by a palm tree as it was being unloaded from a flatbed trailer.

At the time of Morales's death, his employer Lawns maintained an insurance policy with Zenith, entitled "Workers Compensation and Employers Liability Insurance Policy."  The policy contained two types of coverage.

Part I provided "Workers Compensation Insurance."  Under Part I, Zenith was obligated to: (1) pay "the benefits required of [Lawns] by the workers compensation law" in Florida; and (2) defend Lawns in "any claim, proceeding or suit against [Lawns] for benefits payable by this insurance."  Part I contained no explicit policy limits, but stated that Lawns—and not Zenith—would be

2

responsible for "any payments in excess of the benefits regularly provided by the workers compensation law," including, for example, "those required because . . . of [Lawns's] serious and willful misconduct."

Part II provided "Employers Liability Insurance."[1]  Under Part II, Zenith was obligated to: (1) "pay all sums [Lawns] legally must pay as damages because of bodily injury to [its] employees, provided the bodily injury is covered by this Employers Liability Insurance"; and (2) defend lawsuits for such damages.  Thus, Part II expressly limited its coverage to bodily injury sustained by employees only.

Part II contained policy limits of $100,000 for bodily injury sustained by one or more employees in any one accident, $100,000 for bodily injury caused by disease to any one employee, and $500,000 for all damages covered by the policy, regardless of the number of employees involved.

Part II, however, contained several exclusions, including one barring employer liability insurance coverage for "any obligation imposed by a workers

---

[1]Apparently this is a common type of dual-coverage policy.  The Florida Supreme Court has noted that

> a workers' compensation insurance policy often is issued together with an employer's liability insurance policy, with the latter intended to serve as a "gap-filler," providing protection to the employer in those situations where the employee has a right to bring a tort action despite the provisions of the workers' compensation statute.

Travelers Indem. Co. v. PCR Inc., 889 So. 2d 779, 784 n.7 (Fla. 2004) (internal quotation marks omitted).  Thus, this type of policy is intended to afford an employer protection "against the risk of both workers' compensation liability and tort liability" from its employees.  Id. at 787 n.9.

compensation . . . law." That exclusion (the "workers' compensation exclusion") in full states: "This insurance does not cover: . . . . any obligation imposed by a workers compensation, occupational disease, unemployment compensation, or disability benefits law, or any similar law . . . ."

Because Morales's death occurred during the course and scope of his employment, his employer Lawns was required to pay workers' compensation benefits to Morales's family. See Fla. Stat. § 440.09(1). Accordingly, under Part I of the policy, Zenith was obligated to pay workers' compensation benefits on Lawns's behalf. After Morales's death, Zenith began paying workers' compensation benefits equal to 66⅔% of Morales's gross salary to Morales's family in biweekly installments of $513.36. Zenith also contributed $5,000 to Morales's funeral expenses.[2]

## B.    The Estate's Tort Lawsuit against Lawns in State Court

On December 3, 1999, the Estate filed a wrongful death action against Lawns in Florida circuit court, alleging that Lawns's negligence caused Morales's

---

[2]Pursuant to Florida's Workers' Compensation Act at that time, if an employee died and the death was covered by the Act, the employer was required to pay to the employee's family: (1) actual funeral expenses not to exceed $5,000, Fla. Stat. § 440.16(1)(a) (1998); and (2) 66⅔% of the employee's average weekly wage, up to a total limit of $100,000, see id. § 440.16(1)(b).

4

death.[3]  Specifically, the Estate alleged that Lawns's "use of the flatbed trailer without retaining stakes, sides or any manner to prevent the trees from falling off the trailer and killing those persons who were unloading it was negligent."  The Estate did not allege that Lawns had engaged in any intentional tortious conduct or gross negligence.

Zenith agreed to defend Lawns in the action under Part II of the policy pursuant to a reservation of rights, and Zenith retained J. Gregory Giannuzzi to represent Lawns in the lawsuit.  As counsel for Lawns, Giannuzzi filed Lawns's answer to the Estate's complaint and asserted affirmative defenses.  One of Lawns's affirmative defenses was that the Estate's claim was barred because of the Estate's receipt of workers' compensation benefits.  Giannuzzi filed Lawns's motion to dismiss on the same ground.[4]

Representing Lawns in the suit proved difficult.  Lawns never responded to Giannuzzi's letters and phone calls, and Giannuzzi's firm was never able to locate Lawns's lone corporate officer.  Giannuzzi eventually filed a motion to withdraw as counsel because of Lawns's lack of cooperation, which the state court granted.

---

[3]The Estate also sued LNI Designs, Inc., a related company that allegedly loaned Lawns the trailer for transporting the trees. For simplicity, we will use "Lawns" to refer to both defendants in the underlying state court lawsuit.

[4]The state court later denied Lawns's motion to dismiss "having heard arguments of counsel and being fully advised in the premises," but providing no other explanation for the denial.

The state lawsuit proceeded with Lawns unrepresented. The Estate subsequently filed a motion for sanctions due to Lawns's failure to respond to discovery requests and comply with court orders. The state court granted the motion, striking Lawns's pleadings as a sanction and entering a default judgment in the Estate's favor on the issue of Lawns's liability to the Estate.

The case proceeded to a one-day jury trial as to damages. Lawns did not appear at trial. On March 14, 2005, the jury awarded the Estate $9.525 million in damages against Lawns.

## C.    The Workers' Compensation Settlement

While the Estate's wrongful death lawsuit was still ongoing, Zenith continued to pay workers' compensation benefits to the Estate on Lawns's behalf until August 2003, when Zenith made a final lump sum payment of $20,000 in full settlement of the Estate's workers' compensation claim against Lawns. The parties entered a settlement agreement at the same time.[5] The settlement agreement included a section entitled "Election and Waiver," under which the Estate agreed that

> in exchange for the consideration described below, the [Estate] hereby waives all rights to any and all benefits under The Florida Workers' Compensation Act. Further, this settlement and agreement shall

---

[5]The Estate does not dispute that the settlement of the workers' compensation claim was not brought to the state court's attention in the separate tort lawsuit.

6

constitute an election of remedies by the [Estate] with respect to the employer and the carrier as to the coverage provided to the employer.

A judge of compensation claims approved the settlement agreement.[6]  In all, the Estate received over $100,000 in workers' compensation benefits from Zenith, pursuant to the Florida Workers' Compensation Act and Part I of the policy.

## D.    The Estate's Lawsuit in Federal Court

The Estate filed an action in Florida circuit court against Zenith asserting that Zenith had breached its insurance policy with Lawns when it did not pay the Estate the $9.525 million tort judgment entered against Lawns.  Zenith removed the case to a federal court in the Middle District of Florida.[7]

Zenith and the Estate filed cross motions for summary judgment.  Zenith argued it was entitled to summary judgment because: (1) the Estate had elected workers' compensation benefits as its exclusive remedy in the settlement of the workers' compensation claim and had received all workers' compensation benefits owed under Part I of the policy; (2) the Estate's claim was excluded by the

---

[6]Under Florida Statute § 440.20(11)(c), a workers' compensation claimant, if counseled, may waive any and all rights under Florida's Workers' Compensation Act by entering into a settlement agreement releasing the employer and the insurance carrier from liability for workers' compensation benefits in exchange for a lump-sum payment.  A judge of compensation claims must approve the settlement to the extent attorney's fees are paid to the claimant's attorney and to ensure the settlement allocates for recovery of child support arrearages. See Fla. Stat. § 440.20(11)(c), (d).

[7]The Estate's suit also included a declaratory judgment claim and a bad faith claim.  Once the case was removed, the declaratory judgment claim was dismissed, and the bad faith claim was abated pending the district court's resolution of the breach of contract claim.

workers' compensation exclusion in Part II of the policy; and (3) the Estate lacked standing to bring a claim for breach of Part II of Lawns's policy. Alternatively, Zenith contended that even if it was liable, the Estate's damages were limited to the $100,000 policy cap for bodily injury sustained in an accident under Part II of the policy.

In response, the Estate argued that: (1) Zenith failed to preserve any defenses it might have had to the tort action—like workers' compensation immunity and election of remedies—by withdrawing its representation from Lawns in the underlying state suit; (2) the workers' compensation exclusion in Part II did not operate to bar its claim because the $9.525 million judgment was not "an obligation imposed" by Florida's Workers' Compensation Act; and (3) the Estate had standing to bring its breach of contract claim under Part II of the policy as a third party beneficiary. The Estate also contended that Zenith failed to preserve a defense to insurance coverage premised on Lawns's failure to cooperate in the defense of the tort lawsuit because Zenith did not comply with the mandatory notice requirements of Florida's claims administration statute in order to preserve that defense.

The district court granted summary judgment to Zenith and denied it to the Estate, ruling that the workers' compensation exclusion in Part II barred Zenith's coverage of the employee Estate's $9.525 million tort judgment against the

8

employer Lawns.  Observing that Florida law provides workers' compensation benefits as the exclusive remedy for an employee injury caused by an employer's negligence, the district court determined that the Estate's state court lawsuit alleging Lawns's negligence triggered an "obligation imposed by" Florida's Workers' Compensation Act, and thus the judgment issued in that lawsuit fell within the policy exclusion in Part II.[8]

In support the district court cited, inter alia, Indian Harbor Ins. Co. v. Williams, 998 So. 2d 677 (Fla. 4th DCA 2009), and Florida Ins. Guaranty Ass'n, Inc. v. Revoredo, 698 So. 2d 890 (Fla. 3d DCA 1997), as Florida decisions establishing that a workers' compensation exclusion in a liability insurance policy barred coverage of an employee's negligence-based tort claim.  The district court stated that the Florida courts in both Indian Harbor and Revoredo held that workers' compensation exclusions "virtually identical" or "almost identical" to the one in this suit precluded liability insurance coverage of the employees' negligence-based injuries.  Moreover, the district court remarked that holding otherwise "would allow [the Estate] to 'double dip,' and recover both workers' compensation benefits and damages in tort; such a construction would belie the policy behind Florida workers' compensation law."

---

[8]Determining that this argument was dispositive, the district court did not consider Zenith's alternative arguments concerning standing and election of remedies.

The district court acknowledged that another Florida case, Wright v. Hartford Underwriters Ins. Co., 823 So. 2d 241 (Fla. 4th DCA 2002), stated that such an exclusion did not bar coverage.  But the district court found Wright unconvincing for a number of reasons, including that: (1) the statement was "dicta";[9] (2) the underlying suit in Wright was one for gross negligence, and not simple negligence, as alleged here; (3) a footnote in Wright actually supported the result, noting that "[m]anifestly, the purpose of the workers compensation exclusion in part II was to omit coverage thereunder for claims already payable under part I," id. at 243 n.4; and (4) another district court in the Middle District of Florida had rejected the Estate's interpretation of Wright in Sinni v. Scottsdale Ins. Co., 676 F. Supp. 2d 1319 (M.D. Fla. 2009).

Further, the district court concluded that Zenith did not waive its affirmative defense based on the policy exclusion by withdrawing from the defense of Lawns in the state court lawsuit.  The district court distinguished between the affirmative

---

[9]We disagree with the district court's characterization of the relevant language from Wright about the inapplicability of the workers' compensation exclusion to an underlying tort judgment against the insured as dicta.  After the Wright court held that the trial court had erred in dismissing the coverage dispute based on the tort defense of workers' compensation immunity, it remanded the case for the trial court to consider "the remaining coverage issues" and, in so doing, instructed the trial court that the workers' compensation exclusion did not bar coverage of the tort judgment.  Wright, 823 So. 2d at 242–43.  In other words, the applicability of the workers' compensation exclusion was not one of the "remaining coverage issues" to be determined by the trial court on remand because the exclusion did not apply, the appellate court concluded.  Specific instructions to a trial court, which limit what it may consider or hold on remand, are not dicta.

defense of workers' compensation immunity on the one hand, which can be waived if not raised in a tort action, and a contractual policy exclusion on the other hand, which can always be raised to contest coverage.

The district court also rejected the Estate's argument about Zenith's purported failure to comply with the notice provisions of the claims administration statute. The district court stated that compliance with the statute only served to preserve a defense against coverage that previously existed under an insurance policy, not a defense that coverage had never existed in the first instance. Here, Zenith's argument was that coverage had never existed under the workers' compensation exclusion in Part II of the policy, and thus the statute was inapplicable.[10]

Accordingly, the district court granted summary judgment to Zenith.[11] The Estate timely appealed.

## II.  STANDARD OF REVIEW

We review <u>de novo</u> the district court's grant of summary judgment. <u>Skop v. City of Atlanta</u>, 485 F.3d 1130, 1136 (11th Cir. 2007). Summary judgment is

---

[10]In its brief on appeal, the Estate says the district court misinterpreted its argument based on the claims administration statute, but the applicability of this statute appears to have little bearing on the issues now before us.

[11]Given its resolution of the Estate's breach of contract claim in favor of Zenith, the district court held that Zenith was also entitled to summary judgment on the bad faith claim.

appropriate only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We review the evidence, viewing all facts in the light most favorable to the non-moving party. Skop, 485 F.3d at 1136.[12]

### III.  FLORIDA LAW

In this diversity action, the parties agree that Florida's substantive law governs standing to sue under the insurance policy, the interpretation of that policy, and the election of remedies. We set forth the relevant Florida law and then outline the parties' contentions. We then state the certified questions.

### A.    Florida's Workers' Compensation Act

The right of an injured employee to recover from his employer for an injury sustained in the course of his employment is governed by Florida's Workers' Compensation Act. See Fla. Stat. § 440.015. Under the no-fault system created by the Act, "the employee gives up a right to a common-law action for negligence in exchange for strict liability and the rapid recovery of benefits." Turner v. PCR,

---

[12]We issued several jurisdictional questions to the parties about whether the notice of removal and complaint adequately alleged their citizenship in order to invoke the district court's diversity jurisdiction. The parties agree that the allegations of citizenship are likely not sufficient, but that a motion to amend the pleadings would be appropriate under 28 U.S.C. § 1653 to correct the jurisdictional defect. We grant Zenith's request to treat the pleadings as amended by the supplemental materials it has submitted, which do demonstrate diversity of citizenship. See 28 U.S.C. § 1653 ("Defective allegations of jurisdiction may be amended . . . in the trial or appellate courts.").

Inc., 754 So. 2d 683, 686 (Fla. 2000).  As such, "workers' compensation is the exclusive remedy available to an injured employee as to any negligence on the part of that employee's employer."  Eller v. Shova, 630 So. 2d 537, 539 (Fla. 1993) (citing Fla. Stat. § 440.11(1)); see also Ruiz v. Aerorep Grp. Corp., 941 So. 2d 505, 507 (Fla. 3d DCA 2006) ("When an employee's injury arises out of the course and scope of his or her employment, worker's compensation is the exclusive remedy for the injury, and the employer is provided with immunity from any other liability for the injury.").  Thus, workers' compensation law generally makes employers immune from suit.  Eller, 630 So. 2d at 540; see also Turner, 754 So. 2d at 686.

There are two exceptions to this rule.  Workers' compensation law does not immunize an employer from suit when: (1) the employer's intentional tort causes the employee's injury, see Jones v. Martin Elecs., Inc., 932 So. 2d 1100, 1104–05 (Fla. 2006); Fla. Stat. § 440.11(1)(b)(1); or (2) the employer's conduct is "substantially certain" to injure the employee, Eller, 630 So. 2d at 539; see also Fla. Stat. § 440.11(1)(b)(2).

Moreover, even when the injured employee's tort action is not subject to workers' compensation immunity, an injured employee may be precluded from bringing a tort suit against his employer when the employee has elected workers' compensation benefits as his exclusive remedy.  See Jones, 932 So. 2d at 1105. "[M]ere acceptance of some compensation benefits . . . is not enough" to constitute

13

an election of remedies.  Id. (internal quotation marks omitted).  An employee

elects workers' compensation benefits as his exclusive remedy if he has "pursued"

that remedy to "full satisfaction," Lowry v. Logan, 650 So. 2d 653, 656 (Fla. 1st

DCA 1995), a phrase that has been interpreted to mean a "determination or

conclusion on the merits," id. at 657.  A settlement agreement resolving a workers'

compensation benefits claim may constitute a conclusion on the merits.  See Petro

Stopping Ctrs., L.P. v. Gall, 23 So. 3d 849, 852 (Fla. 5th DCA 2009); see also

Lowry, 650 So. 2d at 658.

## B.    Florida's Standards for Construing Insurance Contracts

"[I]n construing insurance policies, courts should read [the] policy as a

whole, endeavoring to give every provision its full meaning and operative effect."

U.S. Fire Ins. Co. v. J.S.U.B., Inc., 979 So. 2d 871, 877 (Fla. 2007) (internal

quotation marks omitted).  When "the terms of an insurance contract are clear and

unambiguous, a court must interpret the contract in accordance with its plain

meaning," Key v. Allstate Ins. Co., 90 F.3d 1546, 1549 (11th Cir. 1996), and a

court must enforce a clear and unambiguous contractual provision "whether it is a

basic policy provision or an exclusionary provision."  Taurus Holdings, Inc. v.

U.S. Fid. & Guar. Co., 913 So. 2d 528, 532 (Fla. 2005) (internal quotation marks

omitted).  If a provision is ambiguous, the provision is strictly construed against

the insurer and in favor of coverage.  Swire Pac. Holdings, Inc. v. Zurich Ins. Co.,

14

845 So. 2d 161, 165 (Fla. 2003).

Ultimately, an insurer's liability depends on whether the insured's claim is within the coverage of the policy. "This remains true even when the insurer has unjustifiably failed to defend its insured in the underlying action." Spencer v. Assur. Co. of Am., 39 F.3d 1146, 1149 (11th Cir. 1994).

## C.     Florida Cases Interpreting Workers' Compensation Exclusions in Liability Policies

Under Florida law it is unclear whether a workers' compensation exclusion in an employer liability policy—which is intended to protect employers from tort liability to their employees—bars coverage of an employee's tort judgment obtained in a separate negligence suit against the employer.

In Florida Ins. Guaranty Ass'n, Inc. v. Revoredo, 698 So. 2d 890 (Fla. 3d DCA 1997), for instance, the Florida Third District Court of Appeal (the "Third DCA") concluded that a workers' compensation exclusion in a commercial general liability ("CGL") policy barred coverage of an employee's negligence claim against the employer despite the employer's failure to obtain workers' compensation insurance.

In Revoredo, a subcontractor's employee died from a workplace injury; neither the subcontractor nor the contractor maintained workers' compensation insurance. Id. at 890–91. The employee's estate filed a wrongful death action against the contractor, and the contractor demanded that its CGL insurer defend

15

him in the action. Id. at 891. When the insurer refused, the contractor settled with the employee's estate and assigned any rights he had against the insurer to the estate. Id. The estate then brought suit against the insurer.

The insurer defended on the basis of the contractor's CGL policy which contained two "standard employee exclusion provisions": (1) a workers' compensation exclusion, the same type of exclusion as in this case; and (2) a more general employee injury exclusion. See id. Specifically, the CGL policy excluded coverage of: (1) "[a]ny obligation of the insured under a worker's compensation . . . law"; or (2) "'[b]odily injury' to . . . [a]n employee of the insured arising out of and in the course of employment by the insured."[13] Id.

As to the workers' compensation exclusion, the estate contended that the exclusion did not apply because the contractor provided no workers' compensation coverage for the injured employee, and thus the contractor's liability for the employee's wrongful death arose under tort law and not workers' compensation law. Id. at 892. As to the employee injury exclusion, the estate argued that the employee was not the contractor's employee, and consequently, the second exclusion did not apply to bar the claim against the contractor. Id.

The Third DCA concluded that both exclusions applied to bar coverage of

---

[13]The Third DCA did not describe the coverage the CGL policy actually provided, but focused on the language of the exclusions from that coverage. See Revoredo, 698 So. 2d at 891–92.

the estate's claim.  Id. at 891.  First, the Third DCA observed that Florida law "made it clear that subcontractors' employees . . . are employees of the contractor." Id.  Thus, the employee exclusion operated to bar the estate's claim.  See id. at 892. Moreover, the Third DCA stated that regardless of the contractor's failure to obtain workers' compensation insurance, the contractor was still required to secure payment of the employee's workers' compensation benefits if the subcontractor did not.  Id.  Accordingly, since the contractor's liability arose under workers' compensation law, the contractor's obligation to the employee was "one under a workers' compensation . . . law," and the workers' compensation exclusion in the CGL policy operated to bar coverage of the estate's wrongful death claim against the employer.  Id. at 893 (internal quotation marks omitted).

The Third DCA also observed "[t]he logic" in these standard employee exclusions, because under a CGL policy, "the only coverage intended, and for which the premium has been paid, is the liability of the insured to the public, as distinguished from liability to the insured's employees whether or not they are protected by the workers' compensation law."  Id. at 892 (emphasis added).

However, in Wright v. Hartford Underwriters Ins. Co., 823 So. 2d 241 (Fla. 4th DCA 2002), the Florida Fourth District Court of Appeal (the "Fourth DCA") suggested a different result while evaluating an exclusion in an employer liability policy and not a CGL policy.

17

In <u>Wright</u>, an employee was injured in the course of his employment. His employer had a dual-coverage workers' compensation and employer liability policy, similar to the one here, with insurer Hartford. <u>Id.</u> at 241. After settling his workers' compensation claim with the employer and Hartford, the employee sued the employer, alleging that his injury was caused by a supervisor's gross negligence for which the employer was vicariously liable. <u>Id.</u> When Hartford declined to defend the employer in the employee's suit, the employer settled the claim with the employee and conceded liability and damages for the employee's injury. <u>Id.</u> The employer assigned its rights as insured under the Hartford policy to the employee, and the employee agreed to seek to recover the judgment only against Hartford under the policy. <u>Id.</u> at 242.

When Hartford refused to pay on the employee's judgment against the employer, the injured employee sued Hartford for damages under the policy. The trial court granted summary judgment to Hartford, ruling that since the insured employer was entitled to workers' compensation immunity in the employee's tort lawsuit, workers' compensation benefits presented the exclusive remedy for the employee's injury, and thus the employee could not pursue payment of the tort judgment from Hartford. <u>Id.</u>

The Fourth DCA reversed. It held that because Hartford declined to defend the employer in the underlying tort lawsuit and the employer waived its affirmative

18

defense of workers' compensation immunity in the settlement of that lawsuit, Hartford was bound by the settlement agreement and could not later contest the employer's liability on the basis of workers' compensation immunity.  Id. at 242–43.  The Fourth DCA remanded the case for consideration of the "remaining coverage issues," namely, whether (1) the employee's supervisor was an insured under the Hartford policy and (2) the policy's intentional tort exclusion applied to bar coverage of the employee's judgment.  Id. at 243.  In remanding, the Fourth DCA specifically told the trial court that the workers' compensation exclusion "in the employer's liability coverage in part II . . . does not apply to [the employee's] civil action because the settlement judgment was not an 'obligation imposed by worker's compensation' law."  Id.  In other words, the appellate court instructed the trial court that the workers' compensation exclusion did not bar coverage of the tort judgment and that coverage issue was not remanded.

Seven years later, in Indian Harbor Ins. Co. v. Williams, 998 So. 2d 677 (Fla. 4th DCA 2009), the Fourth DCA seemingly changed course when it construed a similar exclusion albeit in a CGL policy.  In Indian Harbor, two injured employees sued their employer for negligence.  The employer did not maintain workers' compensation insurance, but the employer did have a CGL policy that excluded coverage of "[a]ny obligation of the insured under a workers

19

compensation . . . law." [14] Id. at 678–79.

The CGL insurer filed declaratory judgment actions to determine whether its insured, the employer, was entitled to coverage under the liability policy for the employees' negligence claims. Id. at 678. The insurer argued that the actions filed against the employer "would have been covered by way of a workers' compensation claim if [the employer] had met his statutory obligation of obtaining workers' compensation insurance." Id. at 679. Thus, even though the employer had failed to obtain workers' compensation insurance, because the employees' claims sounded in workers' compensation law, workers' compensation benefits presented the exclusive remedy to the employees' injuries. Id.

The Fourth DCA held that the workers' compensation exclusion in the CGL policy operated to bar coverage of both employees' negligence claims. See id. at 678. In so doing, the Fourth DCA adopted the Third DCA's reasoning in Revoredo, chiefly the notion that "the only coverage intended [by CGL policies], and for which the insurance premium was paid, was the liability of the insured to the public." See id. at 679 (citing Revoredo, 698 So. 2d at 892).

Federal district courts applying Florida law have more often relied on Indian Harbor and Revoredo than Wright, and have concluded that a liability policy does

---

[14]Similarly to the Third DCA in Revoredo, the Fourth DCA did not explain what coverage was provided by the CGL policy in Indian Harbor, but instead focused on the exclusion. See Indian Harbor, 998 So. 2d at 679.

not cover a negligence-based tort judgment against an employer when the policy contains a workers' compensation exclusion.

For instance, in Sinni v. Scottsdale Ins. Co., 676 F. Supp. 2d 1319 (M.D. Fla. 2009), an injured employee filed a workers' compensation claim and began receiving payments from her employer's workers' compensation insurer. Id. at 1325–26. Eventually, the employee settled the workers' compensation claim with the employer and the workers' compensation insurer for a final lump-sum payment. Id. at 1326.

The employer in Sinni also maintained a CGL policy with another insurer. See id. In pertinent part, the CGL policy provided coverage for "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." Id. at 1327. The CGL policy defined "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." Id. at 1328 (emphasis added).

The employee subsequently filed a tort lawsuit against her employer alleging negligence, and later obtained a consent judgment against her employer after the employer's CGL insurer declined to defend its insured in the tort lawsuit. Id. at 1322, 1327. In the employee's lawsuit against the CGL insurer to collect on the tort judgment, the insurer argued that the employee's claims were barred by a

21

workers' compensation exclusion in the CGL policy which stated that "[t]his insurance does not apply to . . . [a]ny obligation of the insured under a workers' compensation . . . law or any similar law." Id. at 1328.

The district court agreed that the workers' compensation exclusion applied, as the employee's negligence claim was "an obligation of the insured under a workers' compensation law," and further, the claim had been remedied by the employee's full receipt of workers' compensation benefits. Id. at 1330, 1333. The district court concluded that, to the extent Wright stated otherwise, the district court was "firmly convinced that the Florida Supreme Court would not follow Wright."[15] Id. at 1332. The Sinni court also found other problems with Wright, noting, for example, that it appeared that the Fourth DCA later implicitly overruled the relevant Wright language in Indian Harbor. Id. at 1332 n.18. Following Indian Harbor, the district court concluded that the workers' compensation exclusion in the CGL policy applied and barred coverage of the tort judgment.

The district court reached a similar result in XL Ins. America, Inc. v. Ortiz, 673 F. Supp. 2d 1331 (S.D. Fla. 2009). In Ortiz, an employer maintained a CGL policy which covered claims that the insured employer was "legally obligated to

---

[15]Like the district court in the present case, the Sinni court also mischaracterized the relevant language in Wright as dicta. See Sinni, 676 F. Supp. 2d at 1332 & n.18. As we have previously noted, however, this language was not dicta but instead a specific instruction to the trial court, limiting what the trial court could hold on remand. See supra note 9.

pay as damages because of 'bodily injury' or 'property damage'" as well as damages because of "personal and advertising injury." Id. at 1333–34. The CGL policy excepted from coverage "[a]ny obligation of the insured under a workers' compensation . . . law." Id. at 1334.

After sustaining injury in a workplace accident, an injured employee first sued his coworker for gross negligence, and the coworker stipulated to a consent judgment under which he assigned to the employee any claims he might have against their employer and its insurers. Id. at 1337. The employee filed a second state action, this time directly against the employer, asserting breach of contract and negligent misrepresentation. Id. The insurer advised the employer that it would defend the employer subject to a reservation of the insurer's rights under the CGL policy. Id. at 1338.

The insurer in Ortiz then filed a federal declaratory judgment action, seeking a declaration of the insurer's coverage obligations in the disputes. Id. The insurer moved for summary judgment, asserting, inter alia, that the workers' compensation exclusion described above barred liability coverage of the injured employee's tort judgment against the insured employer. Id. at 1339.

Among other reasons, the district court granted summary judgment to the insurer and held that the workers' compensation exclusion operated to bar the employee's claim. The district court observed that the employee had already

23

received workers' compensation benefits for his injury, and under Florida law, the employee could not "double dip" and collect additional damages from another source. Id. at 1344–45. The district court also noted this result accorded with the purpose of these exclusions in CGL policies, as "the only coverage intended, and for which the premium has been paid, is the liability of the insured to the public, as distinguished from liability to the insured's employees." See id. at 1345 (quoting Revoredo, 698 So. 2d at 892).

We now turn to standing and then state the parties' contentions.

### D.    Standing of Injured Third Parties to Sue under Liability Insurance Policies

Generally, "[w]hen a contract is designed solely for the benefit of the formal parties thereto, third persons cannot maintain an action thereon, even though such third persons might derive some incidental or consequential benefit from its enforcement." Am. Sur. Co. of N.Y. v. Smith, 130 So. 440, 441 (Fla. 1930). But under the third party beneficiary doctrine,

> [w]here . . . it is manifest from the nature or terms of a contract that the formal parties thereto intended its provisions to be for the benefit of a third party, . . . the benefit to such third party being the direct or primary object of the contract, or amongst such objects, such third party may maintain an action on the contract.

Id.

The Florida Supreme Court has held that liability insurance policies are "amenable to the third party beneficiary doctrine," and thus one injured by a party

24

insured under a liability insurance policy is an intended third party beneficiary to the policy. See Shingleton v. Bussey, 223 So. 2d 713, 716 (Fla. 1969). In Shingleton, the Florida Supreme Court first applied the doctrine to motor vehicle liability insurance. The Florida Supreme Court observed that securing motor vehicle liability insurance "is an act undertaken by the insured with the intent of providing a ready means of discharging his obligations that may accrue to a member or members of the public as a result of his negligent operation of a motor vehicle." Id. "Viewed in this light," the Florida Supreme Court concluded that such policies intend "to benefit injured third parties" thus "render[ing] motor vehicle liability insurance amenable to the third party beneficiary doctrine." Id. The Florida Supreme Court held that this cause of action vests in or accrues "to the injured party at the same time he becomes entitled to sue the insured." Id.

The Florida Supreme Court later extended these principles to "other forms of liability insurance" in Beta Eta House Corp., Inc. of Tallahassee v. Gregory, 237 So. 2d 163, 165 (Fla. 1970). See Hazen v. Allstate Ins. Co., 952 So. 2d 531, 535 (Fla. 2d DCA 2007).

In response to these Florida Supreme Court cases, the Florida Legislature enacted a statute which limited the circumstances under which an injured third party could sue an insurer as a third party beneficiary to a liability policy. See Hazen, 531 So. 2d at 535 (citing Fla. Stat. § 627.7262 (1976)). The present statute,

25

in pertinent part, requires an injured third party to first obtain a judgment against the insured as a condition precedent to filing a direct lawsuit against the liability insurer:

> It shall be a condition precedent to the accrual or maintenance of a cause of action against a liability insurer by a person not an insured under the terms of the liability insurance contract that such person shall first obtain a settlement or verdict against a person who is an insured under the terms of such policy for a cause of action which is covered by such policy.

Fla. Stat. § 627.4136(1); see Hazen, 952 So. 2d at 534.

## IV.  CONTENTIONS OF THE PARTIES

The parties' primary dispute on appeal is whether the workers' compensation exclusion in Part II of Zenith's employer liability policy operates to bar coverage for the Estate's tort judgment against the employer.  The parties also disagree whether: (1) Zenith may raise defenses based on the policy exclusion, workers' compensation immunity, and election of remedies after withdrawing its defense in the state court tort action against Lawns; and (2) the Estate has standing to bring its breach of contract claim under the liability policy.

First, the Estate argues that a state court tort judgment is not an obligation "imposed by" workers' compensation law but instead a duty to pay imposed by tort law, and thus the workers' compensation exclusion does not apply.  The Estate relies primarily on the language in Wright in support of this contention.  The Estate also complains that the district court arrived at its contrary conclusion by

26

mistakenly relying on cases like Indian Harbor and Sinni, in which courts interpreted CGL policies. Such case law is not applicable to the employer liability policy at issue here, the Estate says, as CGL policies are meant to insure only claims by the public. Thus, in those cases it fits with the purpose of a CGL policy to hold that the policy excluded employee injury claims. In contrast, an employer liability policy is intended to cover employee injury claims. The Estate also contends Florida law explicitly permits receipt of both workers' compensation benefits and tort damages.

As to the availability of defenses, the Estate says that while workers' compensation immunity and election of remedies may have served as affirmative defenses to the lawsuit against employer Lawns, Zenith's failure to raise those defenses in that underlying action against Lawns precludes Zenith from raising them now as bars to coverage under Zenith's policy. Additionally, the Estate argues that even if Zenith could raise an election of remedies defense, the workers' compensation settlement agreement between the Estate, Lawns, and Zenith did not constitute such an election. The settlement agreement only released claims for additional workers' compensation benefits available under Florida's Workers' Compensation Act and did not address any tort claim or tort damages.

As to standing, the Estate argues that, as an injured party armed with a judgment against the insured entered in a cause of action covered by the employer

27

liability policy, it has standing to bring its breach of contract claim as a third party beneficiary to the insurance contract.

Zenith, on the other hand, contends that: (1) the district court properly concluded that the workers' compensation exclusion in Part II of the policy barred the Estate's claim; and (2) the district court properly relied on case law construing similar exclusions, regardless of whether the exclusion was contained in a CGL or employer liability policy. Zenith also points out that a "double recovery" of both workers' compensation benefits and tort damages is permitted only when an employee's injury results from an employer's intentional conduct or conduct reasonably certain to result in harm. Here, Zenith says, the Estate only alleged simple negligence in the state court tort action against Lawns and thus failed to bring its claim within either of those exceptions.

As for election of remedies, Zenith argues that the settlement agreement represents the Estate's election of workers' compensation benefits over any other form of relief. Zenith maintains that the state court would not have entered the default judgment against Lawns in the state court tort action had it known of the workers' compensation settlement, which the Estate "concealed" from the state court. Thus, Zenith says, the Estate should be estopped from further pursuing its claim for the judgment, whether or not the state court knew that the Estate had relinquished its tort claim due to the full receipt of workers' compensation benefits.

28

Lastly, Zenith contends that the Estate did not have standing to sue Zenith for breach of contract as either a third party beneficiary or an equitable assignee of the policy.  Zenith does not address Florida Statute § 627.4136.  Instead, Zenith cites Florida case law stating that one who is not a party to a contract cannot sue for its breach, see, e.g., Greenacre Properties, Inc. v. Rao, 933 So. 2d 19, 23 (Fla. 2d DCA 2006); Caretta Trucking, Inc. v. Cheoy Lee Shipyards, Ltd., 647 So. 2d 1028, 1031 (Fla. 4th DCA 1994), and case law stating that equitable assignment of contract rights requires an intention to assign on both the parts of assignee and assignor, an intention which has not been demonstrated here as to either Lawns or the Estate, see, e.g., SourceTrack, LLC v. Ariba, Inc., 958 So. 2d 523, 526 (Fla. 2d DCA 2007).  Zenith also generally asserts that allowing the Estate to sue it for anything other than workers' compensation benefits is yet another attempt to make an end-run around Florida's workers' compensation scheme.

## V.  CERTIFICATION

Because this appeal depends on resolution of unsettled Florida law, we certify the following questions to the Supreme Court of Florida for determination under Florida law:

(1)    DOES THE ESTATE HAVE STANDING TO BRING ITS BREACH OF CONTRACT CLAIM AGAINST ZENITH UNDER THE EMPLOYER LIABILITY POLICY?

29

(2)    IF SO, DOES THE PROVISION IN THE EMPLOYER LIABILITY POLICY WHICH EXCLUDES FROM COVERAGE "ANY OBLIGATION IMPOSED BY WORKERS' COMPENSATION . . . LAW" OPERATE TO EXCLUDE COVERAGE OF THE ESTATE'S CLAIM AGAINST ZENITH FOR THE TORT JUDGMENT?

(3)    IF THE ESTATE'S CLAIM IS NOT BARRED BY THE WORKERS' COMPENSATION EXCLUSION, DOES THE RELEASE IN THE WORKERS' COMPENSATION SETTLEMENT AGREEMENT OTHERWISE PROHIBIT THE ESTATE'S COLLECTION OF THE TORT JUDGMENT?

The phrasing used in these certified questions is not intended to restrict the Supreme Court's consideration of the problems posed by this case.  This extends to the Supreme Court's restatement of the issues and the manner in which the answers are given.  To assist the Supreme Court's consideration of the case, the entire record, along with the parties' briefs, shall be transmitted to the Supreme Court of Florida.

**QUESTIONS CERTIFIED.**