698 So.2d 890 (1997)
FLORIDA INSURANCE GUARANTY ASSOCIATION, INC., Appellant,
v.
Zenobia REVOREDO, as personal representative of the Estate of Gilberto E. Revoredo, deceased, Appellee.
No. 95-3124.
District Court of Appeal of Florida, Third District.
August 27, 1997.
Walton Lantaff Schroeder & Carson and John P. Joy and Kenneth L. Valentini, Miami, for appellant.
Murray B. Epstein; Perse & Ginsberg and Arnold Ginsberg, Miami, for appellee.
Before FLETCHER, SHEVIN and SORONDO, JJ.
FLETCHER, Judge.
Florida Insurance Guaranty Association, Inc. [FIGA] appeals a summary final judgment determining it to be liable to the estate of Gilberto Revoredo [the estate] pursuant to an insurance policy issued by Guardian Property and Casualty Insurance Company [Guardian](now insolvent and for which FIGA has been substituted). Concluding that Gilberto Revoredo's death is excluded from the policy's coverage, we reverse the summary final judgment and remand the cause for further proceedings.
Gilberto Revoredo was an employee of Lele Concrete and Pumping Company [Lele], a subcontractor hired to accomplish the pouring of concrete for a house being constructed for another person by Tomas Perez, the general contractor. Pursuant to section 440.10(1), Florida Statutes (1989),[1] Revoredo was thus deemed to be employed by Perez, who was thus required to secure payment of Revoredo's workers' compensation if Lele did not. In February, 1990, during the pouring of a concrete tie beam at the job site, Revoredo fell from a scaffold and died shortly thereafter. Neither Lele, Revoredo's actual *891 employer, nor Perez, the general contractor, had provided worker's compensation insurance.
Revoredo's estate filed a wrongful death action against Perez. Relying upon a commercial general liability policy issued to him by Guardian, Perez demanded that Guardian defend the wrongful death action. When Guardian refused to defend (based on the standard employee exclusion[2] provisions in the policy), Perez stipulated to entry of judgment in favor of the estate, which in return agreed to pursue only Guardian. Perez then assigned to the estate any rights he may have had against Guardian, against which Revoredo's estate then filed suit. FIGA was subsequently substituted for Guardian and the trial court entered a summary final judgment against it.
The question the parties argue before this court is whether Revoredo's fall and death are excluded from coverage under Perez's Guardian policy pursuant to the standard employee exclusion provisions thereof (FIGA's position), or whether, because Perez failed to secure payment of workers' compensation, Revoredo did not become an employee and thus his fall and death are not excluded from coverage (the estate's position).[3] Specifically the employee exclusions read (in relevant part):
"This insurance does not apply to:
d. Any obligation of the insured under a worker's compensation ... law.
e. `Bodily injury' to:
(1) An employee of the insured arising out of and in the course of employment by the insured...."
Similar exclusions were the subject of analysis by the First District Court of Appeal in Greathead v. Asplundh Tree Expert Co., 473 So.2d 1380, 1383 (Fla. 1st DCA 1985):
"Florida case law suggests that the purpose of exclusions such as No. 2 [similar to Guardian's exclusion d] is to exclude coverage of those employees protected by the workers' compensation law, whereas the language of No. 5 [similar to Guardian's exclusion e] acts to exclude liability for injury to employees generally. Although the two may overlap to a certain degree, they are not to be read together to exclude only those employees protected by workers' compensation."
Thus, if Perez' obligation to Revoredo or his estate is under the workers' compensation law (as expressed in exclusion d) or if Revoredo was Perez' "employee" within exclusion e's meaning, his fall and death are excluded from the policy's coverage.
We find that both exclusions apply. The Florida Supreme Court, in Motchkavitz v. L.C. Boggs Industries, Inc., 407 So.2d 910, 912 (Fla.1981), made it clear that subcontractors' employees, such as Revoredo, are employees of the contractor and are protected by the workers' compensation law, stating:
"Section 440.10 establishes the concept of `statutory employer' for contractors who sublet part of their work to others. Section 440.11 provides that the liability established in 440.10 is `exclusive.' The effect of *892 section 440.10 is that where a subcontractor performing part of the work of a contractor fails to secure payment of compensation, the contractor is liable for same. If both subcontractor and contractor fail to secure coverage, then the contractor has an employer's liability to the subcontractor's injured employee for purposes of an action for statutory benefits or damages at law or in admiralty." [e.s.]
Statutory employees have been treated identically to actual employees in relation to standard employee exclusion clauses. Dodge v. Fidelity & Cas. Co. of N.Y., 424 So.2d 39 (Fla. 5th DCA) (citing Ward v. Curry, 341 S.W.2d 830 (Mo.1960), rev. denied, 431 So.2d 988 (Fla.1983)); see also Michaels v. United States Fidelity & Guar. Co., 129 So.2d 427 (Fla. 2d DCA 1961). The logic in the exclusion from coverage of both types of employees is simple and compelling: the only coverage intended, and for which the premium has been paid, is the liability of the insured to the public, as distinguished from liability to the insured's employees whether or not they are protected by the workers' compensation law.
Revoredo's estate contends, nonetheless, that neither exclusion applies as (1) Revoredo was not a statutory employee of Perez because Perez did not secure payment of workers' compensation, and (2) thus Perez' liability for wrongful death is an obligation under common law, not under workers' compensation law. The estate is wrong on both counts. First, section 440.10(1) does not make the statutory employer-employee relationship contingent on the securing of workers' compensation for the employee. Rather, it is the creation of the statutory employer-employee relationship that establishes the employer's duty to secure compensation. The Fifth District Court of Appeal, in Lingold v. Transamerica Ins. Co., 416 So.2d 1271, 1272-73 (Fla. 5th DCA 1982)(footnotes omitted), noted that it is the act of subletting (subcontracting) that renders the contractor (here Perez) an employer of the subcontractor's employees:
"Under Florida law applicable in this case, an entity is required to provide workers' compensation when it is an `actual' employer because it employs laborers under direct supervision and control or when it, as a contractor, sublets part of a contract obligation to others and thereby becomes a `statutory employer' of the subcontractor's employees." [e.s.]
None of our statutes declare, and none of our courts has decided, that a failure to secure payment of compensation disestablishes the statutory employer-employee relationship. We specifically hold that there is no such disestablishment.
Second, pursuant to section 440.11(1), Florida Statutes (1989),[4] Perez' liability remained under the workers' compensation law notwithstanding his failure to secure payment of compensation. This is shown by the statute's elimination, in the estate's wrongful death action, of Perez' ability to plead negligence by another employee, of his ability to plead that Revoredo assumed the risk of the employment, and of his ability to plead that the injury was due to Revoredo's comparative negligence. Indeed, our supreme court noted in Motchkavitz v. L.C. Boggs Industries, Inc., 407 So.2d at 912, that the failure to secure compensation does not extinguish this employer-employee relationship:
"If both subcontractor and contractor fail to secure coverage, then the contractor has an employer's liability to the subcontractor's injured employee for purposes of an *893 action for statutory benefits or damages at law or in admiralty." [e.s.]
The "employer's liability" is pursuant to section 440.11(1), thus Perez' obligation to Revoredo is one "under a workers' compensation... law" (Guardian's policy exclusion d), resulting from "bodily injury to [a]n employee of the insured arising out of and in the course of employment by the insured" (Guardian's policy exclusion e). Therefore, the standard employee exclusions bar Guardian's (thus FIGA's) liability to indemnify Perez for his obligation to Revoredo's estate.
This same conclusion has been reached in other jurisdictions. See Weger v. United Fire & Cas. Co., 796 P.2d 72 (Colo.Ct.App. 1990); Tri-State Constr., Inc. v. Columbia Cas. Co./CNA, 39 Wash.App. 309, 692 P.2d 899 (1984)(both holding that employee exclusion provisions barred the insurer's liability to indemnify the insured notwithstanding that the insured employer had not secured payment of compensation for the injured employee).
The summary final judgment is reversed and the cause is remanded for further proceedings consistent with this opinion.
SORONDO, J., concurs.
SHEVIN, Judge, specially concurring.
I concur in the majority opinion only because it properly sets forth Florida worker's compensation law.[5] However, I write separately to highlight what I view as a major flaw with the present worker's compensation statutory scheme. As currently written, chapter 440 permits a "statutory employer" to use this protective status as a shield despite the failure to secure the critical compensation insurance. In so doing, the injured, or in this case, the deceased, subcontractor's employee is not protected by either worker's compensation insurance or by the contractor's liability policy. It is grossly inequitable to permit the "statutory employer" to thereby negate the ameliorative goals of chapter 440.[6]
It is respectfully suggested that the legislature consider remedying this inequity by divesting the "statutory employer" of such status under a general liability policy unless it obtains worker's compensation insurance. Unless such action is taken, the "statutory employee" is bereft of recovery and has no avenue of compensation.
NOTES
[1] Which states:

"In case a contractor sublets any part or parts of the contract work to a subcontractor or subcontractors, all of the employees of such contractor and subcontractor or subcontractors engaged on such contract work shall be deemed to be employed in one and the same business or establishment; and the contractor shall be liable for, and shall secure, the payment of compensation to all such employees, except to employees of a subcontractor who has secured such payment."
[2] "A standard employee exclusion excludes personal injury claims by any employee of the insured arising out of or in the course of his employment." Great Global Assurance Co. v. Shoemaker, 599 So.2d 1036, 1038 (Fla. 4th DCA 1992). "The obvious intent and meaning of these exclusion clauses is to relieve the insurer of responsibility for liability incurred by the insured because of work connected injuries to his business... employees." Griffin v. Speidel, 179 So.2d 569, 571 (Fla.1965).
[3] The trial court, in its summary final judgment, took an entirely different position, concluding that Perez was not a "contractor" within the meaning of section 440.10(1) because he erected the scaffold for the house construction job under a separate contract with the landowner for whom he was building the house. The estate has chosen not to defend this conclusion in its brief and the summary final judgment contains no statutory or case authority therefor. If such logic were to prevail, it would allow a contractor to evade some of her or his obligations under the workers' compensation law by entering into several contracts with the person for whom the job is being performed, for various portions of the same job. In reality, however, whether Perez entered into one, two, or fifty such separate contracts with the landowner, they all merged into one total agreement to complete the total job. In other words, no matter how the job was sliced, it was the job, and Perez was the contractor.
[4] Which reads:

" The liability of an employer prescribed in s. 440.10 shall be exclusive and in place of all other liability of such employer to any third-party tortfeasor and to the employee, the legal representative thereof, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death, except that if an employer fails to secure payment of compensation as required by this chapter, an injured employee, or the legal representative thereof in case death results from the injury, may elect to claim compensation under this chapter or to maintain an action at law or in admiralty for damages on account of such injury or death. In such action the defendant may not plead as a defense that the injury was caused by negligence of a fellow servant, that the employee assumed the risk of the employment, or that the injury was due to the comparative negligence of the employee."
[5] I disagree, however, with the majority's reliance on Weger v. United Fire & Cas. Co., 796 P.2d 72 (Colo.Ct.App.1990), and Tri-State Constr., Inc. v. Columbia Cas. Co./CNA, 39 Wash.App. 309, 692 P.2d 899 (1984). Those cases are not on point as they involve actual employers rather than mere statutory employers.
[6] As stated in Miami Herald Pub. v. Hatch, 617 So.2d 380, 384-385 (Fla. 1st DCA 1993)(quoting Roberts v. Gator Freightways, Inc., 538 So.2d 55, 60 (Fla. 1st DCA), approved, 550 So.2d 1117 (Fla.1989)):

[t]he purpose of section 440.10 is to insure that a particular industry will be financially responsible for injuries to those employees working in it, even though the prime contractor employs an independent contractor to perform part or all of its contractual undertaking.... [T]he obvious legislative intent [is] to insure that a person performing a contractor's work, even as an employee of a subcontractor, shall be entitled to workers' compensation protection with the primary employer if the subcontractor fails to provide such coverage.