# Supreme Court of Florida

_____

No. SC13-696
_____

**LETICIA MORALES, et al.**,
Appellants,

vs.

**ZENITH INSURANCE COMPANY**,
Appellee.

[December 4, 2014]

POLSTON, J.

In a breach of contract action brought by the estate of a deceased employee against his employer's workers' compensation and employer liability insurance carrier, the United States Court of Appeals for the Eleventh Circuit certified the following questions of Florida law:[1]

> (1) DOES THE ESTATE HAVE STANDING TO BRING ITS BREACH OF CONTRACT CLAIM AGAINST ZENITH UNDER THE EMPLOYER LIABILITY POLICY?

> (2) IF SO, DOES THE PROVISION IN THE EMPLOYER LIABILITY POLICY WHICH EXCLUDES FROM COVERAGE "ANY OBLIGATION IMPOSED BY WORKERS'

_____

1.  We have jurisdiction.  See art. V, § 3(b)(6), Fla. Const.

COMPENSATION . . . LAW" OPERATE TO EXCLUDE COVERAGE OF THE ESTATE'S CLAIM AGAINST ZENITH FOR THE TORT JUDGMENT?

(3) IF THE ESTATE'S CLAIM IS NOT BARRED BY THE WORKERS' COMPENSATION EXCLUSION, DOES THE RELEASE IN THE WORKERS' COMPENSATION SETTLEMENT AGREEMENT OTHERWISE PROHIBIT THE ESTATE'S COLLECTION OF THE TORT JUDGMENT?

Morales v. Zenith Ins. Co., 714 F.3d 1220, 1234 (11th Cir. 2013).

For the reasons that follow, we hold that, under Florida law, the estate has standing, but that the workers' compensation exclusion and the release prevent it from collecting the tort judgment from Zenith. Accordingly, we answer all three certified questions in the affirmative.

## BACKGROUND

Santana Morales, Jr., was crushed to death by a palm tree while working for Lawns Nursery and Irrigation Designs, Inc. (Lawns). Thereafter, his surviving spouse, Leticia Morales, entered into a workers' compensation settlement agreement with Lawns and Lawns' workers' compensation and employer liability insurance carrier, Zenith Insurance Company (Zenith). The settlement agreement contained a release, through which Ms. Morales elected the consideration described in the agreement as the sole remedy with respect to the insurance coverage that Zenith provided to Lawns.

- 2 -

In a separate wrongful death lawsuit, which was ongoing when the parties entered the settlement agreement, Morales' estate alleged that Lawns' negligence caused his death and obtained a default judgment against Lawns for $9.525 million. After Zenith refused to pay the tort judgment, the estate sued Zenith in state court under Lawns' employer liability policy, alleging that Zenith had breached the policy. Zenith removed the case to federal court, and the federal district court held that the policy's workers' compensation exclusion barred the estate's suit and therefore entered summary judgment in Zenith's favor. Morales v. Zenith Ins. Co., 2012 WL 124086, at *8 (M.D. Fla. Jan. 17, 2012).

On appeal, the Eleventh Circuit concluded that it is unclear under Florida law "whether a workers' compensation exclusion in an employer liability policy—which is intended to protect employers from tort liability to their employees—bars coverage of an employee's tort judgment obtained in a separate negligence suit against the employer." Morales, 714 F.3d at 1228. The Eleventh Circuit further concluded that Florida law is unsettled as to whether the estate has standing to sue Zenith under Lawns' employer liability policy and whether, if the workers' compensation exclusion does not bar the estate's claim, the release in the workers' compensation settlement agreement prevents the estate from collecting the tort judgment from Zenith. Id. at 1234. Accordingly, the Eleventh Circuit certified the three questions of law set forth above to this Court. Id.

## I.  Standing

The Eleventh Circuit first asks whether the estate has standing under Lawns'
employer liability policy to sue Zenith for breach of contract.  We hold that it does
and therefore answer the first certified question in the affirmative.

Under Florida law, a judgment creditor has standing to bring suit against a
liability insurer that may have coverage for the judgment.  See Johnson v. Dawson,
257 So. 2d 282, 284 (Fla. 3d DCA 1972) ("[A] judgment creditor has standing to
raise the issues of estoppel and waiver as to insurance coverage against the insurer
of the judgment debtor.  However, one possessing standing does not necessarily
prevail upon the proper application of the legal principles he may assert.");
Williams v. Union Nat'l Ins. Co., 528 So. 2d 454, 455 n.1 (Fla. 1st DCA 1988)
(recognizing the right of a judgment creditor to proceed directly against a
tortfeasor's insurance company); see also VanBibber v. Hartford Accident &
Indem. Ins. Co., 439 So. 2d 880, 882-83 (Fla. 1983) (recognizing the ability of an
injured person to bring claims as a third-party beneficiary against the tortfeasor's
insurance company after obtaining a judgment against the tortfeasor).  In fact,
Florida's nonjoinder statute specifically allows a "cause of action against a liability
insurer by a person not an insured under the terms of the liability insurance
contract [but who] obtain[s] a settlement or verdict against a person who is an

- 4 -

insured under the terms of such policy for a cause of action which is covered by such policy." § 627.4136(1), Fla. Stat. (2009).

Accordingly, by virtue of having obtained a judgment against Lawns, Morales' estate has standing to bring a direct action against Zenith to recover that judgment. Therefore, we answer the first certified question in the affirmative.

## II. Workers' Compensation Exclusion

The Eleventh Circuit next asks whether the workers' compensation exclusion in the employer liability policy excludes coverage of the estate's tort judgment against Lawns. We hold that it does and therefore answer the second certified question in the affirmative.

As the Eleventh Circuit explained, "[u]ltimately, an insurer's liability depends on whether the insured's claim is within the coverage of the policy." Morales, 714 F.3d at 1227. In determining whether a claim is covered by an insurance policy, this Court enforces "a clear and unambiguous" provision pursuant to its plain language regardless of "whether it is a basic policy provision or an exclusionary provision." Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co., 913 So. 2d 528, 532 (Fla. 2005) (quoting Hagen v. Aetna Cas. & Sur. Co., 675 So. 2d 963, 965 (Fla. 5th DCA 1996)). Further, this Court reads the "policy as a whole, endeavoring to give every provision its full meaning and operative effect." U.S. Fire Ins. Co. v. J.S.U.B., Inc., 979 So. 2d 871, 877 (Fla. 2007) (quoting Auto-

Owners Ins. Co. v. Anderson, 756 So. 2d 29, 34 (Fla. 2000)). Only if a provision is ambiguous after considering the policy as a whole will this Court construe the ambiguous provision against the insurer in favor of coverage. Swire Pac. Holdings, Inc. v. Zurich Ins. Co., 845 So. 2d 161, 165 (Fla. 2003).

The policy at issue is a "Workers Compensation and Employers Liability Insurance Policy" issued by Zenith to Morales' employer, Lawns. Part One of the policy provides Workers Compensation Insurance, under which Zenith agreed to pay "the benefits required of [Lawns] by the workers compensation law." Part Two provides Employers Liability Insurance, under which Zenith agreed to pay "all sums [Lawns] legally must pay as damages because of bodily injury to [its] employees, provided the bodily injury is covered by this Employers Liability Insurance." Through a workers' compensation exclusion, the employer liability policy excludes coverage for "any obligation imposed by a workers compensation . . . law."

Reading these provisions together, it is clear that the workers' compensation exclusion bars coverage of claims arising from bodily injuries for which Lawns is required to pay benefits under workers' compensation law—i.e., claims that are covered by the workers' compensation insurance portion of the policy. In other words, as we have previously explained, employer liability insurance is a "gap-filler [that] provid[es] protection to the employer in those situations where the

employee has a right to bring a tort action despite the provisions of the workers' compensation statute." Travelers Indem. Co. v. PCR Inc., 889 So. 2d 779, 784 n.7 (Fla. 2004) (quoting Producers Dairy Delivery Co. v. Sentry Ins. Co., 718 P.2d 920, 927 (Cal. 1986)); see also Appleman on Insurance Law and Practice § 4571 (Berdal ed. 1979) (describing the coverages provided by workers' compensation and employer liability insurance as "mutually exclusive"); 9A Couch on Ins. § 132:57 (3d ed. 2013) (explaining that employer liability insurance " 'fill[s] the gaps' in workers' compensation coverage").

In this case, the estate did not have the right to bring a tort action against Lawns. Rather, because the estate alleged that Lawns' negligence caused Morales' death, its exclusive remedy was under Florida's Workers' Compensation Law, chapter 440, Florida Statutes. See generally § 440.11(1), Fla. Stat. (2014) (addressing the exclusiveness of workers' compensation liability); see also Eller v. Shova, 630 So. 2d 537, 539 (Fla. 1993) ("[W]orkers' compensation is the exclusive remedy available to an injured employee as to any negligence on the part of that employee's employer . . . so long as the employer has not engaged in any intentional act designed to result in or that is substantially certain to result in injury or death to the employee."); Morales, 2012 WL 124086, at *3 ("Workers' compensation laws effectuate a compromise between employers and employees in

which employers pay prompt benefits to injured workers, regardless of fault, and employees in turn give up their common law rights to sue their employer in tort.").

Despite not having the right to do so, the estate brought a separate tort action against Lawns and secured a default judgment. The estate now argues that Zenith cannot avoid coverage of the tort judgment through the workers' compensation exclusion since the judgment is a duty to pay imposed by tort law, not an "obligation imposed by workers' compensation law." In support of this argument, the estate relies primarily on the Fourth District Court of Appeal's decision in Wright v. Hartford Underwriters Ins. Co., 823 So. 2d 241, 243 (Fla. 4th DCA 2002), in which the Fourth District concluded that an insurance company could not rely on a workers' compensation exclusion to avoid coverage of a settlement judgment entered in an injured employee's civil suit against his employer because the judgment was not an "obligation imposed by workers' compensation law."

However, unlike the estate's complaint against Lawns—which alleged that Lawns' negligence caused Morales' death and therefore plainly implicated workers' compensation exclusivity—"the affirmative defense of workers compensation immunity [did not] appear[] on the face of Wright's civil complaint." Id. at 242 n.3. Instead, as the Fourth District explained, Wright alleged that his injuries were the result of a fellow employee's gross negligence, for which his employer was vicariously liable. Id. at 241. This allegation

- 8 -

implicated a statutory exception to workers' compensation immunity and allowed Wright to pursue a civil remedy. See generally § 440.11(1), Fla. Stat. ("[F]ellow-employee immunities shall not be applicable to an employee who acts, with respect to a fellow employee, . . . with gross negligence when such acts result in injury or death[.]"); see also Wright, 823 So. 2d at 243 ("Whether [Wright's co-worker] is an insured under the policy and whether the intentional tort exclusion applies are issues remaining to be determined."). In other words, unlike the estate's allegations against Lawns, Wright's allegations against his employer removed his claim from the exclusivity of Florida's Workers' Compensation Law, thereby implicating a gap in his employer's workers' compensation insurance for the employer liability insurance to fill.

Though the nature of Wright's claim makes the Fourth District's application of the workers' compensation exclusion in his case inapplicable to the facts of this case, its more recent decision in Indian Harbor Ins. Co. v. Williams, 998 So. 2d 677 (Fla. 4th DCA 2009), is instructive as to how the workers' compensation exclusion applies to negligence-based claims by injured employees. In Indian Harbor, 998 So. 2d at 678, the Fourth District addressed whether the employer, who was insured under a commercial general liability (CGL) policy, "was entitled to coverage for negligence claims brought against him by his employees . . . for injuries they sustained within the course and scope of their employment." Even

though the employer had violated its statutory duty to maintain workers' compensation insurance, and even though the employee's claim was also barred by a separate employee exclusion, the Fourth District applied the policy's workers' compensation exclusion to hold that the employer was not entitled to coverage. Id. at 679.

In so holding, the Fourth District "adopt[ed] the reasoning" of the Third District Court of Appeal's decision in Florida Insurance Guaranty Ass'n v. Revoredo, 698 So. 2d 890 (Fla. 3d DCA 1997). Id. Like the Fourth District in Indian Harbor, the Third District in Revoredo addressed whether a CGL policy's workers' compensation exclusion barred coverage of an employee's negligence claim where the employer had failed to secure workers' compensation insurance. Revoredo, 698 So. 2d at 891. The Third District held that "both" the workers' compensation exclusion and a separate employee exclusion (which generally bars coverage for bodily injury to employees) applied to preclude coverage. Id. The Third District explained its holding with respect to the workers' compensation exclusion as follows: because "[t]he 'employer's liability' is pursuant to section 440.11(1)" of the Workers' Compensation Law, its "obligation to [the employee] is one 'under a workers' compensation . . . law' " for purposes of the CGL policy's workers' compensation exclusion. Id. at 893; see also XL Ins. Am., Inc. v. Ortiz, 673 F. Supp. 2d 1331, 1344-45 & n.14 (S.D. Fla. 2009) (holding CGL policy's

workers' compensation exclusion precluded recovery of damages for the same bodily injury for which the employee had received workers' compensation benefits); Sinni v. Scottsdale Ins. Co., 676 F. Supp. 2d 1319, 1332 (M.D. Fla. 2009) ("[C]overage is determined by looking at the policy and the actual facts—not the labels attached to the underlying tort obligation.").

Like the negligence-based claims in Indian Harbor and Revoredo, the estate's tort judgment arises from an injury that plainly falls within the exclusivity of Florida's Workers' Compensation Law and therefore within the coverage provided by Lawns' workers' compensation policy. Given the mutually exclusive nature of workers' compensation and employer liability coverages, Zenith has no obligation under the employer liability policy to pay the tort judgment. See 8 Couch on Ins. § 115:89 (3d ed. 2013) ("It is the fact that the employee's claim comes within the scope of the workers' compensation statute rather than the actual fact that he or she has recovered or is receiving workers' compensation for his or her harm, which is the basis for exclusion [under a workers' compensation exclusion]. . . . [A]nyone who is eligible for compensation is excluded.").

Accordingly, we hold that the workers' compensation exclusion bars coverage of the estate's tort judgment under the employer liability policy. Therefore, we answer the second certified question in the affirmative.

### III. Release

Last, the Eleventh Circuit asks whether the release in the workers'

compensation settlement agreement precludes the estate from collecting the tort

judgment from Zenith. We hold that it does and therefore answer the third

certified question in the affirmative.

As explained above, while the estate's wrongful death action was pending

against Lawns, Morales' surviving spouse, Leticia Morales (who is also the

personal representative of Morales' estate), entered into a workers' compensation

settlement agreement with Lawns and Zenith. The agreement was entered

pursuant to section 440.20(11)(c)-(e) of Florida's Workers' Compensation Law,

and contains the following release:

> ELECTION AND WAIVER: Pursuant to Florida Statutes, Section
> 440.20(11)(c) (2001), in exchange for the consideration described
> below, the Claimant hereby waives all rights to any and all benefits
> under The Florida Workers' Compensation Act. Further, this
> settlement and agreement shall constitute an election of remedies by
> the claimant with respect to the employer and the carrier as to the
> coverage provided to the employer.

We read this provision to do what it says, namely to elect the consideration

described in the settlement agreement (i.e., a lump-sum payment authorized by

section 440.20(11)(c) of the Workers' Compensation Law) as the sole remedy for

Morales' death. Florida law authorizes such an election. See Jones v. Martin

Electronics, Inc., 932 So. 2d 1100, 1106 (Fla. 2006) ("[T]o constitute an election of

remedies the workers' compensation remedy must be pursued to a determination or

- 12 -

conclusion on the merits. . . .  There must be evidence of a conscious intent by the claimant to elect the compensation remedy and to waive his other rights.") (quoting Wheeled Coach Indus., Inc. v. Annulis, 852 So. 2d 430, 433 (Fla. 5th DCA 2003)); see also Petro Stopping Ctrs., L.P. v. Gall, 23 So. 3d 849, 852 (Fla. 5th DCA 2009) (holding claimant elected workers' compensation benefits to the exclusion of tort benefits through a settlement agreement); Moniz v. Reitano Enters., Inc., 709 So. 2d 150, 153 (Fla. 5th DCA 1998) (precluding employee from maintaining tort action for injuries that were not separable from the injury for which she had elected workers' compensation benefits through a settlement agreement).

And, as a direct party to the settlement agreement, Zenith is entitled to enforce its terms to avoid any payment obligation to the estate arising from the insurance it provided to Lawns.  See Philip J. Padovano, Florida Civil Practice § 11.6 (2014 ed.) ("A settlement agreement creates new contractual rights and duties which may be enforced in place of the underlying claims and defenses.").

Nevertheless, the estate contends that the release is not binding on Ms. Morales because she signed the settlement agreement in her capacity as parent and guardian of four minor children (rather than in her individual capacity or her capacity as personal representative of Morales' estate), and that it is not binding with respect to the minor children's tort claim because the probate court did not approve it and the children were not represented by guardians ad litem.

However, to accept the estate's argument would require us to ignore Florida law governing the way in which workers' compensation claims are made and settled. Specifically, in a case such as this one involving an employee's death as a result of employer negligence, the employer's statutory workers' compensation liability is "exclusive and in place of all other liability . . . of such employer to any third-party tortfeasor and to the employee, the legal representative thereof, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death." § 440.11(1), Fla. Stat.

Florida's Workers' Compensation Law fixes the amount of compensation for the employee's death that is due to the employee's statutory beneficiaries, including the spouse and children. See § 440.16, Fla. Stat. Surviving spouses, like Ms. Morales, may make a claim for the available statutory benefits. See Blackburn v. Taylor, 566 So. 2d 915, 916 (Fla. 1st DCA 1990) (recognizing that a "surviving spouse" of a deceased employee is entitled to claim workers' compensation benefits). Further, the Workers' Compensation Law allows a claimant who is represented by counsel, as Ms. Morales was, to settle such a claim, as Ms. Morales did. See § 440.20(11)(c)-(d), Fla. Stat.

In this case, it is undisputed that the settlement agreement complied with Florida's Workers' Compensation Law and was approved by the judge of

compensation claims. The fact that the estate subsequently obtained a tort judgment against Lawns that should have been prohibited by both the release and workers' compensation immunity does not somehow prevent Zenith from enforcing the remedy Ms. Morales elected.

Accordingly, we hold that the release precludes the estate from collecting the tort judgment from Zenith and therefore answer the third certified question in the affirmative.

## CONCLUSION

For the foregoing reasons, we answer all three certified questions in the affirmative. Having answered the certified questions, we return this case to the United States Court of Appeals for the Eleventh Circuit.

It is so ordered.

LABARGA, C.J., and PARIENTE, LEWIS, QUINCE, CANADY, and PERRY, JJ., concur.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

Certified Question of Law from the United States Court of Appeals for the Eleventh Circuit - Case No. 12-11755

Lee Delton Gunn, IV, of Gunn Law Group, P.A., Tampa, Florida, and Tracy Raffles Gunn of Gunn Appellate Practice, P.A., Tampa, Florida,

for Appellants

Ira William Spivey, II and Courtney M. Keller of Greenberg Traurig, P.A., Orlando, Florida, and Elliot H. Scherker, Julissa Rodriguez, and Jay Andrew Yagoda of Greenberg Traurig, P.A., Miami, Florida,

　　　for Appellee

William Harris Rogner of Hurley, Rogner, Miller, Cox, Waranch & Westcott, P.A., Winter Park, Florida, on behalf of The Florida Association of Insurance Agents; Katherine Eastmoore Giddings and Nancy Mason Wallace, Akerman LLP, Tallahassee, Florida, and William Wells Large, Tallahassee, Florida, on behalf of the Florida Justice Reform Institute, et al.; Rayford Huxford Taylor of Casey Gilson P.C., Atlanta, Georgia, on behalf of Associated Industries of Florida, Inc., et al.;

　　　for Amici Curiae