[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 23-12161

Non-Argument Calendar

_____

SOUTHERN-OWNERS INSURANCE COMPANY,

Plaintiff-Appellant,

*versus*

JUAN FARRERA,
JASON ANDREWS,
A Florida Resident,
JASON ANDREWS CONSTRUCTION INC,
A Florida Corporation,

Defendants-Appellees,

_____

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 5:22-cv-00049-RH-MJF

_____

Before JILL PRYOR, BRANCH, and ABUDU, Circuit Judges.

PER CURIAM:

In this appeal, we must decide whether Southern-Owners Insurance Company ("Southern-Owners") owes a duty to defend Jason Andrews based on an insurance policy (the "Policy") it issued to Andrews' business, Jason Andrews Construction, Inc. ("JAC"). The district court found that Southern-Owners had such a duty. After careful consideration, and for the reasons explained below, we discern no reversible error in the district court's order and affirm.

## I. FACTUAL BACKGROUND & PROCEDURAL HISTORY

While working on a construction project in May 2019, Juan Farrera fell through a roof and was injured. The roof Farrera was working on had been damaged by Hurricane Michael and the property owner had selected Andrews for the repair job. At the time Farrera fell, he was working for a sub-contractor, DeLeon Construction, LLC, who, in turn, was working for JAC, the contractor. Farrera and his wife Minca Farrera sued JAC, Jason Andrews individually, as well as DeLeon and the project owner, in state court. The operative complaint alleged that Andrews was Farrera's supervisor, that Andrews was an employee and agent of JAC, and that

Andrews acted with gross negligence, including by failing to provide Farrera safety equipment. Farrera also alleged that neither Andrews, JAC, or DeLeon Construction provided him with fall protection equipment. Farrera was not on any company's workers' compensation insurance. Farrera's suit alleged claims of negligence against Andrews, DeLeon Construction, and JAC, gross negligence against Andrews, DeLeon Construction, and JAC, negligence against JAC on a vicarious liability theory, and negligent hiring against the property owner.

Southern-Owners insured JAC under a Commercial General Liability insurance policy from February 2019 through February 2020. Based on the Policy, Southern-Owners defended Andrews and JAC in the state court lawsuit under a reservation of rights.

Southern-Owners subsequently sued the Farreras, Andrews, and JAC in district court. It sought a declaratory judgment stating that it was not obligated to defend or indemnify Jason Andrews or JAC in the state court suit. After each party had submitted evidence, the parties consented to a bench trial on the written record. Specifically, the district court proposed, and the parties accepted, a procedure where it would "read all the materials as they now exist and make a ruling." Southern-Owners also represented that the parties agreed there was no further evidence "out there that could be presented." Because the parties agreed to that procedure, we summarize the relevant facts from the evidence submitted before turning to the merits of the dispute.

Eulises DeLeon, owner of DeLeon Construction, testified as follows. Farrera was the uncle of DeLeon's wife and the two had never worked together before April 2019. DeLeon had around four employees when DeLeon Construction was started, and Farrera was not one of them. However, in 2019, Farrera had been experiencing financial difficulties and needed work. Farrera had also been—and continued—working for other construction companies, but DeLeon did not know which companies. Farrera helped clean the job sites, "and on occasions he'd get up on the roof." Farrera had been working with DeLeon for two to four weeks before he was injured.

Hurricane Michael had recently hit Florida, and roofing contractors were especially busy. Both DeLeon and Farrera lived in Alabama and had come into the state to do roofing work, mostly on residential houses. DeLeon explained that, in this context, he had hired Farrera on a temporary basis, but did not keep employment records or consider him a permanent employee. DeLeon paid Farrera in cash. While DeLeon had tracked how much Farrera was being paid in the past, he no longer had the records.

Farrera was on the roof when he was injured, helping other workers install a metal laminate roof. The other workers on the roof were employees of DeLeon Construction who had been hired through SouthEast Leasing. DeLeon had not seen Farrera fall but had heard that the workers were "pulling a sheet of . . . laminate" and then, while Farrera was moving to the other side of the roof, "there was no decking" and he fell off the roof. DeLeon had not

provided Farrera with equipment but, generally speaking, there were harnesses available to all of the workers on the site. None of the workers were wearing harnesses, however, because they believed "the roof was sufficiently flat." Farrera also was not wearing a helmet on the day he was injured. Jason Andrews was present when Farrera was injured, as DeLeon Construction was working for JAC at the time. DeLeon agreed that he was "just doing . . . Farrera a favor by giving him some work that [he] could pay him cash for." DeLeon had not attempted to file a claim for workers' compensation for Farrera because he "knew he was not covered."

DeLeon agreed that DeLeon Construction "ha[d] enough employees" that it did not need Farrera to show up and that Farrera was not replacing any permanent employee who was on leave or absent. However, he also stated that he "did need" Farrera to help get this project done. DeLeon also explained that he supervised Farrera's work, Andrews did not. DeLeon also signed an affidavit stating that Farrera "was an independent contractor or temporary worker, who was free to come to work by the day, if he wished to earn money . . . [and] was free to work on other work sites or for other companies, as he wished."

Andrews testified as follows. JAC had been doing roofing work for around 10 years. The company had some of its own employees, including a secretary and several laborers. In 2018, after Hurricane Michael, Andrews met DeLeon, who contacted JAC and asked if JAC had work due to the storm. Andrews put DeLeon on the payroll of JAC and then "his guys . . . that came with him" were

also put on payroll.  DeLeon and his workers were paid by the job and by the size of the project.  Later, though, DeLeon and his employees became employees of DeLeon Construction, and they came off JAC's payroll.

Andrews explained that Farrera was working at the job site where he was injured and was removing roof panels and putting on new roof panels.  To Andrews' knowledge, Farrera had not worked for JAC before.  Andrews had not had any "dealings" with DeLeon or DeLeon Construction with regard to the individual employees at each job site.  DeLeon had his own business, and Andrews was not "in charge of the employee part" of that business.  DeLeon also, at that point, presented Andrews with a certificate of insurance for his business, but Andrews did not look into the details of whether his workers were covered.  In other words, by the time of Farrera's accident in May 2019, neither Farrera nor DeLeon's other employees were being paid through JAC.

Andrews was on the job site on the day Farrera was injured and he had no recollection that any other employees of JAC were present.  Andrews had the opportunity to observe DeLeon and his employees' work, but he was not on the same level of the roof as Farrera when Farrera fell.  Andrews had observed DeLeon Construction's work in the past and generally thought it was done well.  Andrews testified that he had provided DeLeon some equipment, including ropes, harnesses, and ladders, but that DeLeon had some of his own equipment as well.  Andrews stated that all workers were "instructed to" wear ropes and harnesses "any time they"

were over six feet off the ground.  He believed that all of the workers understood this system.

Andrews stated that the workers had been using ropes and harnesses on the day Farrera fell.  In addition, the workers were "quite a ways through the job" at the time.  Then, the workers had taken lunch and had not put ropes and harnesses on after lunch.  "[W]ithin 15 minutes or so" after lunch, Farrera was carrying a roofing panel and fell off the roof.  DeLeon was directing the work of Farrera, and Andrews was on site to "perform[] some of the detail work [him]self"—not to "direct[] any of [DeLeon's] employees."  Andrews also explained that DeLeon, not himself, was controlling the workers and was the supervisor of the workers, including Farrera, who were on the site that day.  In fact, Andrews explained, many of the workers did not speak English and DeLeon was able to communicate with them in Spanish, while Andrews did not speak Spanish.  Andrews had no knowledge of whether Farrera was a temporary worker or a seasonal employee.

The parties also stipulated to some facts.  As relevant, they agreed that Farrera "was working on the roof at a [JAC] job site at the time of his fall and injuries" and that there was no workers compensation insurance in place for Farrera at the time of his fall.

The parties also set out their theories of the case, which we summarize in brief here and then address further below.

Southern-Owners contended throughout that Farrera was an employee, not a temporary worker.  It, accordingly, argued that either JAC or DeLeon was obligated to acquire and maintain

workers' compensation for Farrera, but failed to do so. It argued, therefore, that the Policy's "Workers' Compensation and Similar Laws" exclusion applied, and Southern-Owners had no duty to defend Andrews. It also contended that the "employer's liability" exclusion in the Policy barred coverage because Farrera was an employee of JAC.

Andrews and JAC argued that Farrera was a temporary worker because DeLeon's testimony established as much and Southern-Owners had no evidence that DeLeon's testimony was untrue. Farrera likewise argued that the evidence, including the recent hurricane and the brevity of Farrera's tenure with DeLeon, showed that he was a temporary worker, not an employee under the Policy. Moreover, he argued that finding him to be a temporary worker would be "a reasonable interpretation" of the facts that would provide coverage, which, under Florida law, should be adopted.

The district court ultimately concluded that Southern-Owners had a duty to defend Andrews from all the claims in the state court lawsuit.[1] In its findings of fact and conclusions of law, it first explained that Andrews was an insured for the purposes of Farrera's state court lawsuit because he was an executive officer of

---

[1] The district court reserved the question of whether, if Southern-Owners had a duty to defend Andrews against all claims in the state-court lawsuit but did not have a duty to defend JAC, its duty to defend Andrews carried with it a duty to defend JAC. While the district court later ruled on that issue, it was not resolved before this appeal was taken, and an amended notice of appeal has not been filed, so we do not address it here.

23-12161                  Opinion of the Court                  9

JAC. Next, it concluded that the "Workers' Compensation and Similar Laws" exclusion did not apply because workers' compensation immunity does not bar an injured employee's claim against a fellow employee for gross negligence. The district court explained that, under state law, Andrews was a fellow employee as relevant to this exclusion. Finally, turning to the "Employer's Liability" exclusion, the district court concluded that Farrera "was a 'temporary worker' not an 'employee'" under the Policy's provisions. This finding was based on the following: (1) Hurricane Michael caused extensive damage to the area where the project was occurring; (2) Farrera was "paid on a cash basis for a short period . . . [and] had been there no more than three weeks when he fell"; and (3) Farrera was "brought in to meet short-term workload conditions." It rejected Southern-Owners' argument that it should apply the statutory definition of "employee" because the Policy defined the term "employee" and Florida law required it to apply the Policy definition.

For these reasons, the district court concluded that the exclusions invoked by Southern-Owners did not apply and Southern-Owners had a duty to defend Andrews from all the claims in the state-court lawsuit. Southern-Owners timely appealed.[2]

---

[2] We have jurisdiction because the district court's order, while not final under 28 U.S.C. § 1291, had the practical effect of an injunction. *See* 28 U.S.C. § 1292(a)(1); *James River Ins. Co. v. Ultratec Special Effects Inc.*, 22 F.4th 1246, 1252-53 (11th Cir. 2022).

## II. STANDARDS OF REVIEW

"On appeal following a bench trial, a district court's conclusions of law are reviewed *de novo*, and its findings of fact are reviewed for clear error." *A.I.G. Uru. Compania de Seguros, S.A. v. AAA Cooper Transp.*, 334 F.3d 997, 1003 (11th Cir. 2003).  The "interpretation of the language" of an insurance policy "constitutes a ruling on a question of law," so our review of the district court's interpretation of the Policy is *de novo*. *EmbroidMe.com, Inc. v. Travelers Prop. Cas. Co. of Am.*, 845 F.3d 1099, 1105 (11th Cir. 2017).

When we review for clear error, we are deferential to the district court's view of the evidence. *Bellitto v. Snipes*, 935 F.3d 1192, 1197 (11th Cir. 2019).  "A finding of fact is clearly erroneous 'when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *OHI Asset (VA) Martinsville SNF, LLC v. Wagner (In re Wagner)*, 115 F.4th 1296, 1303 (11th Cir. 2024) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985)).  "Therefore, '[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.'" *Id.* (quoting *Anderson*, 470 U.S at 574).  "[A] reviewing court may not set aside a finding of fact that is based on the trial judge's 'decision to credit the testimony of one . . . or more witnesses, each of whom . . . told a coherent and facially plausible story that is not contradicted by extrinsic evidence.'" *Id.* at 575-76 (quoting *Anderson*, 470 U.S. at 575-76).

### III. DISCUSSION

Like the district court, we apply Florida law to this dispute. *Westchester Gen. Hospital, Inc. v. Evanston Ins.*, 48 F.4th 1298, 1302 (11th Cir. 2022). Florida law instructs us to construe insurance policies "in accordance with the[ir] plain language," with ambiguities construed in favor of the insured. *Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So. 2d 528, 532 (Fla. 2005) (quoting *Swire Pac. Holdings, Inc. v. Zurich Ins. Co.*, 845 So. 2d 161, 165 (Fla. 2003)). In doing so, "[w]e read policies as a whole and undertake to give every provision its 'full meaning and operative effect.'" *Parrish v. State Farm Florida Ins. Co.*, 356 So. 3d 771, 774 (Fla. 2023) (quoting *Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000)).

"Under Florida law, 'an insurer's duty to defend its insured against a legal action arises when the complaint alleges facts that fairly and potentially bring the suit within policy coverage.'" *Travelers Indem. Co. of Conn. v. Richard McKenzie & Sons, Inc.*, 10 F.4th 1255, 1261 (11th Cir. 2021) (quoting *Jones v. Fla. Ins. Guar. Ass'n*, 908 So. 2d 435, 442–43 (Fla. 2005)). An insurer's duty to defend is "broad" and does not depend on whether the underlying suit has merit. *Id.* That is because the analysis of whether an insurer owes a duty to defend turns upon the allegations of the underlying complaint; an insurer may have a duty to defend even when the complaint's allegations turn out to be "factually incorrect or meritless," *Jones*, 908 So. 2d at 443, or rest on an "unsound" legal theory, *State Farm Fire & Cas. Co. v. Higgins*, 788 So. 2d 992, 996 (Fla. 4th DCA 2001), *approved* 894 So. 2d 5 (Fla. 2004).

"'Any doubts regarding the duty to defend must be resolved in favor of the insured,' and 'where a complaint alleges facts that are partially within and partially outside the coverage of a[] . . . policy, the insurer is not only obligated to defend, but must defend the entire suit.'" *Travelers Indem.*, 10 F.4th at 1261 (first quoting *Jones*, 908 So. 2d at 443; and then quoting *Sunshine Birds & Supplies, Inc. v. U.S. Fid. & Guar. Co.*, 696 So. 2d 907, 910 (Fla. 3d DCA 1997)). Florida courts "determine whether an insurer has a duty to defend its insured based only on 'the eight corners of the complaint and the policy.'" *Id.* (quoting *Mid-Continent Cas. Co. v. Royal Crane, LLC*, 169 So. 3d 174, 182 (Fla. 4th DCA 2015)). We consider the facts alleged in the complaint as they are "fairly read." *Id.* (quoting *Fun Spree Vacations, Inc. v. Orion Ins. Co.*, 659 So. 2d 419, 421 (Fla. 3d DCA 1995)).

An insurer does not need to defend an insured when a policy exclusion applies. *Westchester Gen.*, 48 F.4th at 1302. "[T]he insured has the initial burden to establish that a policy coverage applies, but then 'the burden shifts to the insurer to prove that the loss arose from a cause which is excepted.'" *Id.* (quoting *Hudson v. Prudential Prop. & Cas. Ins. Co.*, 450 So. 2d 565, 568 (Fla. 2d DCA 1984)).

With these principles in mind, we must answer three questions in this appeal: (1) whether Andrews is an "insured" under the Policy for Farrera's state court claims against him; (2) whether the Policy's "Workers' Compensation and Similar Laws" exclusion applies here; and (3) whether the Policy's "Employer's Liability"

exclusion applies in this circumstance.  We address the first and third questions together, then turn to the second question.

### A. Andrews is an Insured under the Policy, and the "Employer's Liability" Exclusion does not apply here.

The Policy includes a list of defined terms.  As relevant here, it defines "executive officer" as "a person holding any of the officer positions created by [JAC's] charter, constitution, by-laws or any other similar governing document."  It defines "temporary worker" as "a person who is furnished to [an insured] to substitute for a permanent employee on leave or to meet seasonable or short-term workload conditions."  The definitions also exclude "temporary worker[s]" from the definition of "employee."

Under the subheading "Section II – Who is An Insured," the policy lists categories of individuals who are insureds, including:

> 1.d. An organization other than a partnership, joint venture or limited liability company [is] an insured. [That organization's] 'executive officers' and directors are insureds, but only with respect to their duties as your officers or directors. . . .

> 2.a. Your 'employees', other than either your 'executive officers' . . . or your managers . . . [are also insureds], but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. . . .

These definitions go on to clarify that "no person is an insured for 'bodily injury', 'personal injury', or 'advertising injury' . . . [t]o an

'employee' of any insured while in the course of his or her employment or performing duties related to the conduct of any insured's business." While somewhat repetitive, the Policy's "Employer's Liability" exclusion provides that the Policy does not cover "bodily injury to . . . an 'employee' of any insured arising out of and in the course of employment by any insured."

The district court concluded that "executive officers" of JAC were insured "with respect to their duties as such." Based on that conclusion, it found that Andrews—an executive officer of JAC—was an insured.

On appeal, Southern-Owners concedes that Andrews was an "executive officer" of JAC under the Policy's definition. However, it contends that the district court erred in concluding that Andrews was an insured for two reasons. First, it argues that the Policy's exception relating to injuries suffered by "employees" applies to Farrera because the Policy's definition of "employee" does not apply to Farrera. Second, it argues that the district court erred in concluding that Farrera was a temporary worker. For similar reasons, it argues that the Policy's employer's liability exclusion applies.

As to the first point, Southern-Owners contends that the district court should have used Florida's statutory definition of "employee," Fla. Stat. § 440.02(18)(a), rather than the Policy's definition of employee, *see* Fla. Stat. § 440.02(18)(a) ("'Employee' means any person who receives remuneration from an employer for the performance of any work or service while engaged in any employment under any appointment or contract for hire or

apprenticeship, express or implied, oral or written, whether law-fully or unlawfully employed, and includes, but is not limited to, aliens and minors.'"). Unlike the Policy definition, the statutory definition contains no exception for "temporary workers," and Southern-Owners points to caselaw that establishes that Farrera—if a statutory employee of DeLeon—would be considered a statu-tory employee of JAC. So, Southern-Owners' argument goes, if Fla. Stat. § 440.02(18)(a)'s definition applies instead of the Policy definition, Farrera was an employee and Andrews was not an in-sured for injuries suffered by Farrera and, in addition, the Policy's employer's liability exclusion would apply.

We agree with the district court that the Policy's definition of "employee" determines the scope of who is an insured and the scope of the employer's liability exclusion. Southern-Owners' pro-posed interpretation would violate the Policy's plain language, which unambiguously exempts "temporary workers" from the def-inition of employee. *Taurus Holdings*, 913 So. 2d at 532. Southern-Owners' position would also require us to ignore, or excise, the portion of the Policy that defines "employee," rather than give that "provision its 'full meaning and operative effect.'" *Parrish*, 356 So. 3d at 774 (quoting *Anderson*, 756 So. 2d at 34). If these problems did not give us sufficient pause, Southern-Owners' reading would also require us to find "doubt" and then construe the doubt in favor of the insurer and against the insured. *Travelers Indem.*, 10 F.4th at 1261; *Taurus Holdings*, 913 So. 2d at 532. Florida law does not per-mit us to read the Policy that way. *See Altman Contractors, Inc. v. Crum & Forster Specialty Ins. Co.*, 232 So. 3d 273, 274-79 (Fla. 2017)

(holding that a proceeding was within a policy's definition of "suit" even though it was not a "civil proceeding" as a matter of state law); *see also State Farm Mut. Auto. Ins. Co. v. Spangler*, 64 F.4th 1173, 1184 (11th Cir. 2023) (applying Florida law and explaining that generally parties may contract around applicable state law in an insurance policy, so long as law and public policy do not void such a contract).  Thus, the district court did not err in applying the Policy definition of "employee" in determining whether Andrews was an insured and determining whether the Employer's Liability exclusion applied.[3]

Second, Southern-Owners argues that there is nothing in the operative complaint, or in the other evidence submitted, supporting the district court's finding that Farrera was a temporary worker.  We disagree.  Our review of the eight corners of Farrera's operative state-court complaint and the Policy together shows that the documents, alone, do not answer whether Farrera was an employee or a temporary worker when he was injured.  However, in order to prevail, Southern-Owners must show that the state court litigation does not contain facts that "fairly and potentially bring the suit within policy coverage."  *See Jones*, 908 So. 2d at 442-43; *Higgins*, 788 So. 2d at 996; *Travelers Indem.*, 10 F.4th at 1261.  This

---

[3] As the district court explained, "Southern-Owners included in its policy a definition of 'employee'" that exempted temporary workers, "so that definition applies to the word 'employee' as used in the [P]olicy."  *See Fayad v. Clarendon Nat'l Ins. Co.*, 899 So. 2d 1082, 1086 (Fla. 2005) ("[T]he insurer is held responsible for clearly setting forth what damages are excluded from coverage under the terms of the policy.").

can be true even if the complaint's allegations turn out to be deficient in one way or another. *Jones*, 908 So. 2d at 443; *Higgins*, 788 So. 2d at 996. Therefore, because the eight corners of the complaint and Policy, "fairly" read, do not show that Farrera was *not* a temporary worker, Southern-Owners' argument fails without turning to extrinsic evidence.

That said, there is a narrow exception to the "eight corners" rule we discussed above—an insurer may be relieved of a duty to defend if an undisputed fact takes a claim outside the policy coverage, even if the factual allegation does not appear in the complaint. *See, e.g.*, *Higgins v. State Farm Fire & Cas. Co.*, 894 So.2d 5, 10 n.2 (Fla. 2004). Based on the parties' stipulations, we also will review the district court's conclusions on this point based on the extrinsic evidence.[4] Our review is for clear error. *A.I.G. Uru. Compania de Seguros*, 334 F.3d at 1003.

Given this deferential standard of review, Southern-Owners has not shown clear error, as the extrinsic evidence, if anything, supports a finding that Farrera was a temporary worker rather than

---

[4] To the extent that Southern-Owners now argues that the district court should not have looked beyond the complaint and the Policy, we note that it did not ask the district court to limit its consideration of this issue to the complaint and, in fact, asked the district court to consider outside evidence on this issue. *See, e.g.*, *Crockett v. Uniroyal, Inc.*, 772 F.2d 1524, 1530 n.4 (11th Cir. 1985) (explaining that it is "a cardinal rule of appellate review that a party may not challenge as error a ruling or other trial proceeding invited by that party"); *United States v. Stone*, 139 F.3d 822, 838 (11th Cir. 1998) (similar).

a finding that he was an employee under the Policy. *Anderson*, 470 U.S. at 574.

The district court cited Farrera's short time working for DeLeon and the recency of Hurricane Michael, facts supported by the record. While not dispositive, DeLeon also testified that he considered Farrera a temporary employee, not a permanent one. Moreover, JAC had increased work because of the Hurricane and Farrera and DeLeon had come from out of state because there was additional work available for the same reason. Reviewing these facts and the rest of the record, we conclude there is sufficient evidence to support the district court's finding that Farrera was "a person who [wa]s furnished to [Andrews and/or JAC] to substitute for a permanent employee on leave or to meet seasonable or short-term workload conditions." In addition, Southern-Owners does not cite facts that show definitively that Farrera was *not* a temporary worker, which it would need to do to show clear error on an issue for which it bore the burden in any event. Accordingly, even if it were a close call, our standard of review requires us to give deference to the factfinder's view of the evidence. *See Bellitto*, 935 F.3d at 1197; *Wagner*, 115 F.4th at 1303.

In sum, we affirm on this issue based on the Policy as a whole and the district court's factual findings which we conclude are not clearly erroneous. Andrews was an "executive officer" of JAC and was an insured under the Policy as such. While "no person" is an insured under the Policy for injuries suffered by "employees," Farrera was not an "employee" under the Policy, he was

a "temporary worker," excluded from the Policy's own definition of "employee." For these reasons, we affirm the district court's ruling that Andrews was an insured.

This discussion also resolves Southern-Owners' arguments about the "employer's liability" exclusion. Indeed, all the cases Southern-Owners cites on this point address situations where an employer's liability exclusion barred coverage for the injuries of "employees" and the injured was an "employee" under the policy at issue. In this case, Farrera was not an "employee" under the terms of the Policy. He was a temporary worker, and this exclusion does not address temporary workers at all.

Finally, Southern-Owners' position that Farrera must have been either (and only) a statutory employee or an actual employee under the Policy is unsupported. It is consistent with contractual principles and Florida law that a term can mean one thing under state law and another in a contract. *See, e.g.*, *Spangler*, 64 F.4th at 1176 ("Because an insurer can provide more [uninsured motor vehicle] coverage than the law requires, we decline to disregard the Policy's broader definition of uninsured motor vehicle in favor of a more limited statutory definition of motor vehicle."). Accordingly, the district court did not err in concluding that Ferrara was not an employee under the Policy's definition of that term but was a statutory employee for the purposes of the workers' compensation exclusion that we discuss next which, naturally, incorporates the workers' compensation definitions in Florida law. These conclusions comport with our responsibility to read the Policy "as a

whole and undertake to give every provision its full meaning and operative effect." *Parrish*, 356 So. 3d at 774. We, therefore, find no error in the district court's reasoning on this issue either.

### B. The "Workers' Compensation and Similar Laws" Exclusion does not apply.

The Policy's workers' compensation and similar laws provision provides that the coverage does not extend to "[a]ny obligation of the insured under a workers' compensation, disability benefits or unemployment compensation or any similar law." On appeal, Southern-Owners argues that it does not have a duty to defend Andrews because this "Workers' Compensation and Similar Laws" exclusion applies. The district court, however, rejected this contention and found that Farrera's suit alleged gross negligence by Andrews—a co-employee—such that the claim fell outside the workers' compensation exclusion.

On appeal, the parties dispute whether Andrews was an employee under Florida's workers' compensation law. This dispute is dispositive to the application of the Policy's workers' compensation exclusion because, if Andrews is alleged to be a co-employee of Farrera in the state court lawsuit, then allegations of gross negligence against Andrews would take that claim outside of workers' compensation coverage. *See* Fla. Stat. § 440.11(1)(b). Then, the Policy's workers' compensation exclusion would not apply to bar coverage.

The Florida Supreme Court has explained that "workers' compensation is the *exclusive* remedy available to an injured

employee as to any negligence on the part of that employee's employer." *Eller v. Shova*, 630 So. 2d 537, 539 (Fla. 1993) (emphasis added) (citing Fla. Stat. § 440.11(1)); *Morales v. Zenith Ins. Co.*, 152 So. 3d 557, 562 (Fla. 2014) (same). However, "where injuries are not encompassed within [Florida's] Worker's Compensation Act, the employee is free to pursue his or her common law remedies." *Mena v. J.I.L. Constr. Grp. Corp*, 79 So. 3d 219, 222 (Fla. 4th DCA 2012) (quoting *Tractor Supply Co. v. Kent*, 966 So. 2d 978, 981-82 (Fla. 5th DCA 2007)).

In general, because of the exclusivity of the workers' compensation scheme, a claim for damages brought by an employee who is injured on the job cannot be maintained against an employer unless the employer committed an intentional tort causing the injury. *See Morales*, 152 So. 3d at 562; *Fla. Ins. Guar. Ass'n v. Revoredo*, 698 So. 2d 890, 890-93 (Fla. 3d DCA 1997). "The same immunities from liability enjoyed by an employer shall extend as well to each employee of the employer when such employee is acting in furtherance of the employer's business" except that, as relevant, these "fellow-employee immunities shall not be applicable to an employee who acts, with respect to a fellow employee, with willful and wanton disregard or unprovoked physical aggression or with gross negligence . . . ." Fla. Stat. § 440.11(1)(b); *see also Morales*, 152 So. 3d at 562. A more significant immunity applies to a subset of employees:

> The same immunity provisions enjoyed by an employer shall also apply to any sole proprietor, partner, corporate officer or director, supervisor, or other

> person who in the course and scope of his or her duties acts in a managerial or policymaking capacity and the conduct which caused the alleged injury arose within the course and scope of said managerial or policymaking duties and was not a violation of a law, whether or not a violation was charged, for which the maximum penalty which may be imposed does not exceed 60 days' imprisonment as set forth in [Fla. Stat. § ] 775.082"

Fla. Stat. § 440.11(1)(b).

As noted above, Florida law broadly defines "employee" for the purposes of the workers' compensation scheme as "any person who receives remuneration from an employer for the performance of any work or service while engaged in any employment under any appointment or contract for hire or apprenticeship, express or implied, oral or written, whether lawfully or unlawfully employed . . . ." Fla. Stat. § 440.02(18)(a). This definition "includes any person who is an officer of a corporation and who performs services for remuneration for such corporation within this state, whether or not such services are continuous." *Id.* § 440.02(b). The law also defines "employer." *See* Fla. Stat. § 440.02(19)(a) ("If the employer is a corporation, parties in actual control of the corporation, including, but not limited to, the president, officers who exercise broad corporate powers, directors, and all shareholders who directly or indirectly own a controlling interest in the corporation, are considered the employer for the purposes of [Sections] 440.105, 440.106, and 440.107.").

On this issue, Southern-Owners does not dispute that Farrera was a statutory employee for purposes of workers' compensation under Fla. Stat. § 440.02(15).[5] It also does not dispute that Farrera was injured in the course and scope of his work; he was entitled to workers' compensation coverage; and that he was not provided workers' compensation coverage. However, it argues that the district court erred in concluding that workers' compensation immunity did not apply so the Policy's workers' compensation exception also does not apply. Southern-Owners argues that the district court erred in concluding that Farrera and Andrews were co-employees. It states that Andrews was a supervisor or a corporate officer under Florida law, for whom workers' compensation immunity applies unless the "criminal acts" exception applies—*i.e.*, allegations of gross negligence are not enough, only allegations of culpable negligence would avoid workers' compensation immunity and fall outside the exclusion.

Farrera and Andrews argue that they were co-employees, so the district court properly found that the complaint's allegations of gross negligence were sufficient to avoid workers' compensation immunity. With regard to this portion of the district court's order, they contend they were each "employees" under Florida's

---

[5] As previously discussed, the term "employee" is defined differently under the workers' compensation exclusion compared to the Policy's employer's liability exclusion and the Policy's definition of "employee" referenced in the determination of who is an insured under the Policy. Because the workers' compensation exclusion applies workers' compensation law, the definition of "employee" for purposes of workers' compensation applies.

workers' compensation law and contend that the district court properly looked to whether the complaint alleged "gross negligence."

Here, yet again, the state court complaint does not squarely answer whether Andrews was an employer or an employee under Florida's workers' compensation law. This uncertainty cuts against Southern-Owners, as it bears the burden to show "that the loss arose from a cause which is excepted." *Westchester Gen.*, 48 F.4th at 1302; *see also Baron Oil Co. v. Nationwide Mut. Fire Ins. Co.*, 470 So. 2d 810, 815 (Fla. 1st DCA 1985) (concluding that an insurer does not owe a duty to defend where a "complaint alleges facts that *clearly* bring the entire cause of action within a policy exclusion" (emphasis added)). The district cited Florida's broad definition of "employee," which, based on the complaint and evidence submitted, arguably includes both Farrera and Andrews. *See* Fla. Stat. § 440.02(18).

The complaint alleged that Andrews was a JAC employee, that Andrews had a duty to "maintain" and "inspect" the premises, and that he was on-site doing work unrelated to Farrera's work on the day of Farrera's injury. Moreover, Andrews explained that he did not speak the same language as Farrera, and that only DeLeon could communicate with Farrera and the other workers who did not speak English. These facts all lend support to the district court's conclusion that the state court lawsuit asserted a claim against Andrews as a co-employee. In addition, the complaint asserts that Andrews acted with gross negligence. Thus, the

allegations in the state court suit of gross negligence by a co-employee bring the suit outside the exclusivity of workers' compensation, *Morales*, 152 So. 3d at 562, and the Policy's exclusion does not apply.

Of course, this theory of the case may ultimately be disproven in the state court lawsuit—for instance, it could be that Andrews was only ever acting in fact as an executive officer, not a co-employee—but the duty to defend still exists. *Jones*, 908 So. 2d at 443 ("[An] insurer must defend even if the allegations in the complaint are factually incorrect or meritless."); *Higgins*, 788 So. 2d at 996; *see also Baron Oil*, 470 So. 2d at 814 ("Hence, the duty to defend continues even though it is ultimately determined that the alleged cause of action is groundless and no liability is found within the policy provisions defining coverage."). We accordingly affirm on this issue as well.

## IV. CONCLUSION

For the reasons described above, Southern-Owners has not shown error in the rulings of the district court. We therefore affirm in all respects.

**AFFIRMED**.